IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

WILLIAM E. ULRICH                                                                                    PLAINTIFF

VS.                                        CASE NO. 4:10-CV-04024

DEPUTY J. THORNTON, INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY WITH
THEHEMPSTEAD COUNTY SHERIFF'S
DEPARTMENT; DEPUTY GARY DORMAN,
INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY WITH THE HEMPSTEAD COUNTY
SHERIFF'S DEPARTMENT                                                                              DEFENDANTS

**ORDER**

Before the Court is Defendants J. Thornton's and Gary Dorman's Motion for Partial Summary Judgment. (ECF No. 26). The Plaintiff has responded (ECF No. 32), and the matter is ripe for the Court's consideration. For the following reasons, the Defendants' motion will be granted in part and denied in part.

The Plaintiff's action against the Defendants is based on the Plaintiff's arrest on March 24, 2009. Around 6:00 that evening, the Plaintiff noticed Herman Keel, his neighbor with whom he had been having a property dispute, on his property. Mr. Keel had called the Sheriff's Department out to his property to explore a flooding problem that Mr. Keel believed the Plaintiff had caused. The Plaintiff approached Mr. Keel, who was talking to Deputy Thornton, and asked Mr. Keel to leave the Plaintiff's property. Deputy Dorman then approached the Plaintiff and told him to back off. A heated exchange ensued, and the Plaintiff was arrested and charged with disorderly conduct. He was found guilty of that charge at trial.

The Plaintiff filed suit against the deputies in their individual and official capacities claiming: 1) use of excessive force and failure to train under 42 U.S.C. § 1983; 2) intentional infliction of emotional distress; and 3) battery. The Plaintiff seeks compensatory and punitive damages on each of his claims. In their motion for partial summary judgment, the Defendants ask for judgment on their official-capacity liability. The Defendants contend that, viewing the facts most favorably to the Plaintiff, there is no basis for liability in their official capacities.

## STANDARD OF REVIEW

The standard of review for summary judgment is well established.  The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(a); *Krenik v. County of LeSueur*, 47 F.3d 953 (8th Cir.1995).  The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir.1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund*, 800 F.2d 742, 746 (8th Cir.1986).  A fact is material only when its resolution affects the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  *Id*. at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir.1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of LeSueur*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 256.

DISCUSSION

The Plaintiff's claims may be grouped into two types for the purpose of summary-judgment analysis: 1) § 1983 claims; and 2) intentional-tort claims. The Defendants' argument against official-capacity liability on both types of claims rests on the Defendants' government status. A defendant's government status is analyzed differently under each type of claim, and so the Court will take each in turn.

1. **Section 1983 claims**

Under 42 U.S.C. §1983, a citizen is authorized to file suit against anyone who, under color of law, deprives the citizen of "any rights, privileges or immunities secured by the Constitution." 42 U.S.C. § 1983 (2006). The Plaintiff has brought suit under that statute claiming various constitutional violations. The Defendants' move for summary judgment in their official capacities on the Plaintiff's excessive-force and failure-to-train claims.

A suit against a person in his official capacity is treated as a suit against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). A local government may not be sued under § 1983 based solely

on the acts of its employees. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). A local government may, however, be liable where lawmakers, or those whose acts represent official policy, establish a policy or custom that inflicts constitutional injury. *Id.* Government-policy liability exists where final policymakers deliberately choose to follow a course of action chosen from among various alternatives, and the course of action causes constitutional injury. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Government-custom liability exists where the Plaintiff shows:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir. 1998) (citing *Jane Doe A By and Through Jane Doe B v. Special School Dist. Of St. Louis County*, 901 F.2d 642, 646 (8th Cir. 1990) (internal citation omitted)).

    1.1    *Excessive Force*

Official-capacity liability[1] for a government custom requires proof of a continuing, widespread, and persistent pattern of unconstitutional conduct by government employees. *Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir. 1998). The Defendants' Motion does not discuss whether the deputies' conduct was unconstitutionally excessive, but the Court may assume for now that it was. Still, the Plaintiff here has not shown sufficient facts to demonstrate

---

[1] The Plaintiff may not allege *government-policy* liability on his excessive force theory, because the deputies who arrested the Plaintiff did not have policy making authority, and the Plaintiff has not claimed that the sheriff's department deliberately chose a policy of excessive force.

4

a pattern of such conduct. All of his allegations relate to his experience on March 24, 2009. That single experience is not enough to show a widespread pattern of misconduct. Therefore, the Court finds that summary judgment for the defendants in their official capacities is proper on the Plaintiff's excessive-force claim.

### 1.2 *Failure to Train*

In his Complaint, the Plaintiff claims that the Hempstead County Sheriff's Department does not have an adequate policy to prevent officers from getting involved in civil disputes and taking sides. (ECF No. 1, at 4). Because the Department lacked such a policy, the Plaintiff argues, the individual Defendants who arrested the Plaintiff were not adequately trained to deter the type of behavior that harmed the Plaintiff. (ECF No. 1, at 4).

A government agency can be liable for inadequately training its employees. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). But inadequate police training only supports a § 1983 claim where the failure to train "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* In the Eighth Circuit, on-the-job training and education at a police academy are typically sufficient to avoid failure-to-train liability. *See, e.g.*, *Andrews v. Fowler*, 98 F.3d 1069, 1078–79 (8th Cir. 1996) (two weeks on-the-job training and police-academy training within one year of employment found sufficient); *Williams-El v. Johnson*, 872 F.2d 224, 230 (8th Cir. 1989) (policy of city to give on-the-job and police-academy training found sufficient).

The Defendants note that both deputies involved in the Plaintiff's alleged harm had completed the Arkansas Law Enforcement Training Academy program, which is required of all Arkansas law-enforcement officers. The deputies also had on the job training. The Plaintiff has not offered evidence to dispute that training, and a bare assertion that the officers were not

adequately trained will not survive summary judgment. The Plaintiff has failed to raise a material issue of fact regarding the sufficiency of the deputies' training in this case. Therefore, the Court finds that summary judgment for the Defendants in their official capacities is proper on the Plaintiff's failure-to-train claim.

### 2. Intentional-tort liability

The Plaintiff claims that the Defendants committed the intentional torts of battery and outrage against him. As in the Plaintiff's § 1983 claims, the Court does not now discuss the Defendants' underlying liability for those torts, because the Defendants have not raised that issue in their Motion. The only issue currently before the Court is whether the Defendants in their official capacities are immune from the Plaintiff's intentional-tort claims.

Deputies Thornton and Dorman seek shelter under an Arkansas statute making government actors immune from tort liability. ARK. CODE. ANN. § 21-9-301 (West 2012). Whether an official is covered by the statute is a question of law. *City of Farmington v. Smith*, 237 S.W.3d 1, 5 (Ark. 2006). The Arkansas Supreme Court has "consistently held that section 21-9-301 provides city employees with immunity from civil liability for negligent acts, but not for intentional acts." *Id.* The government-immunity statute thus does not shield government actors from intentional-tort liability. *Deitsch v. Tillery*, 833 S.W.2d 760, 762 (Ark. 1992); *Battle v. Harris*, 766 S.W.2d 431, 433 (Ark. 1989); *Martin v. Hallum*, ___S.W.3d___, 2010 Ark. App. 193. That point of Arkansas law is clear, and so the intentional-tort claims against the individual deputies in their official capacities must remain.

### CONCLUSION

For the above reasons, the Defendants' Motion for Partial Summary Judgment (ECF No. 26) should be and hereby is **GRANTED** as to the Plaintiff's official-capacity § 1983 claims.

Those claims are therefore **DISMISSED WITH PREJUDICE**. The Defendants' Motion for Partial Summary Judgment should be and hereby is **DENIED** as to the Plaintiff's official-capacity intentional-tort claims. The Plaintiff's individual-capacity § 1983 claims, official-capacity tort claims, and individual-capacity tort claims remain for trial.

    IT IS SO ORDERED, this 29th day of May, 2012.

                                                  <ins>/s/ Susan O. Hickey</ins>
                                                  Hon. Susan O. Hickey
                                                  United States District Judge